# Benner, Appellant, v. Cassatt.

*Trespass—Encroachment on land—Foundation wall.*

1. A bill in equity to restrain the maintenance of the windows in what is alleged to be a party wall and for damages, is properly dismissed where it appears that the foundation of the wall as originally built encroached upon plaintiff's land from two and one-half to four inches at places; that the whole of the wall above the foundation was within the defendant's line, and that the portions of the foundation wall which encroached upon the plaintiff's land were removed when the defendant's attention was called to the encroachment and before the bill was served upon him; and all the more should the bill be dismissed if it appears that the strip of land extending along the side of the plaintiff's lot where the wall was built, was subject to the easement of an alley for the use of the owners and occupants of the lots bounding thereon. In such a case the costs are properly placed upon the plaintiff where it appears that at the time the bill was filed and service thereof accepted, the intrusion on the plaintiff's premises had ceased; nor had the plaintiff any right to damages whatever.

*Equity practice—Filing bill—Printed bill—Certificate as to time—Certificate as to poverty—Cost of bill.*

2. Where a plaintiff files an unprinted bill in equity without the certificate as to time or poverty, required by the equity rules, and immediately borrows the bill from the prothonotary, and it is never seen again, and one week thereafter the plaintiff files a printed bill in proper form, the court will consider the first bill as a nullity, and will dispose of the case and the costs thereon by a consideration of the second bill only.

Argued March 21, 1912. Appeal, No. 83, Jan. T., 1912, by plaintiff, from decree of C. P. No. 4, Phila. Co., March T., 1911, No. 782, dismissing bill in equity in case of Samuel T. Benner v. Robert K. Cassatt. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction, and for damages. AUDENRIED, J., filed the following opinion:

The bill prays that the defendant be restrained from

maintaining windows in what is alleged to be a party wall between his property and that of the plaintiff, and from continuing to trespass on the plaintiff's land. It also prays for an award of damages as compensation for the trespass complained of.

The trial judge finds that the wall referred to in the bill is not a party wall; that the only trespass committed on the plaintiff's land by any one connected with the defendant had ceased before the bill was served on the latter, and that the plaintiff is not entitled to have damages for the trespass complained of awarded him in these proceedings because he has failed to show any facts existing at the time when his bill was served which would suffice to give equity jurisdiction over the matter, because he has failed to show that he sustained pecuniary injury by reason of such trespass, and because the proofs do not show the defendant's responsibility for the trespass. The decree nisi dismisses the bill and requires the plaintiff to pay the costs.

To the findings of the trial judge the plaintiff has filed sixteen exceptions. These may be classified and discussed under three heads. The first class relate to the finding that the wall through which the defendant has opened windows is not a party wall. The second class relate to the disposition of the case as if the proceeding had its inception on March 14, 1911, instead of on March 7, 1911. The third class relate to the refusal of an award of damages for the trespass complained of in the bill.

The plaintiff's lot fronts on the west side of Fifteenth street and extends westward parallel with Locust street. The defendant's lot fronts on the north side of Locust street and extends northward parallel with Fifteenth street until it reaches the south line of the plaintiff's lot. The wall referred to in the bill is built across the north end of the defendant's lot. Its foundation was originally of stone. Its superstructure is of brick. That portion of the wall above the surface of the ground

stands south of the division line between the two lots. Some of the stones of the foundation originally constructed projected slightly and in varying degrees to the north of that line. At one point where the plaintiff's witnesses examined the foundation the encroachment amounted to four inches; at another point to two inches and a half. It was not shown that the encroachment extended along the entire face of the foundation. When the attention of the defendant's contractor was directed to the encroachment, this stone foundation was removed and there was substituted for it a foundation of brick that does not project beyond the defendant's boundary. The stone foundation was wholly removed before March 14, 1911, as were also the cornice that surmounted the wall and the show sills of the windows opened through it.

On these facts the plaintiff contends that the defendant's north wall must be regarded as a party wall, and that, therefore, the defendant should be restrained from maintaining the windows that have been constructed in it. The basis for this contention is the fact that the foundation that had originally supported the wall was partly laid upon the plaintiff's ground. It is claimed that the question whether such a wall as that with which we are here concerned is or is not a party wall depends in every instance on the location of its foundation; the structure being always a party wall if its foundation is laid in part on the lot adjoining that of the builder.

It is, in general, the law that a wall which has its foundations laid partly on the ground of an adjoining owner is a party wall: Western National Bank's Appeal, 102 Pa. 171; and this is true, even where so much of the wall as appears above the surface of the ground is wholly within limits of one of the lots and does not project beyond the division line; ib.: Lukens v. Lasher, 202 Pa. 327. Where, however, its foundation was not meant to encroach on the lot adjoining that of the builder but does so accidently, and to a very slight de-

gree, and there is nothing else to indicate that the builder intended that the wall should be used to accommodate both properties, the protrusion of parts of the foundation into the neighboring land must be regarded as a mere trespass, and, if the encroaching projections of the foundation be removed, the wall is not to be treated as a party wall: Pile v. Pedrick, 167 Pa. 296.

The facts in the case at bar resemble quite closely those in the case last referred to. The plaintiff proved that the foundation stones of the defendant's wall projected at two points for an inconsiderable distance into his soil. This was probably due to the carelessness of the workmen who constructed it. It was not shown that the defendant or his architect had directed that such an encroachment should be made. The strip of land three feet wide extending along the southern side of the plaintiff's lot is subject to the easement of an alley laid out as a passageway and watercourse for the use of the owners and occupants of the lots bounding thereon. While it may be that the plaintiff has the right to build over this alley provided that he leaves so much headway as not to obstruct its use for the purpose for which it was intended, it is so improbable that he will ever do so that it is unreasonable to impute to the defendant the anticipation that such a thing would come to pass, and the intention to build a wall for the accommodation of both lots. The existence of the easement of the alleyway would certainly have prevented the plaintiff from building a party wall along the south side of his lot, and since the right to construct a party wall must necessarily be a mutual one, it is difficult to see how, in view of this circumstance, the defendant alone could have enjoyed such a right. If the defendant had no right to build a party wall along his north line, the intention to build one is manifestly not to be ascribed to him, and the encroachment of his foundation on the plaintiff's land must be viewed as a mere trespass, in no wise affecting the character of the super-

structure. For these reasons we are of the opinion that the wall referred to in the bill is not a party wall, and that, consequently, the windows opened through it may be maintained by the defendant.

The second group of exceptions raise the question whether or not the court should dispose of the case upon the basis of the facts as they existed on March 14th, 1911. The relevancy of the question is this: On that date the continuing trespass complained of by the plaintiff had already ceased, and the trial judge, finding that there was at that time nothing to enjoin, dismissed the bill on that ground and put the costs on the plaintiff. It is conceded that if at the time when this proceeding was instituted the trespass was still persisted in, the plaintiff should not be burdened with the costs, even though subsequent to its institution the trespass ceased. The simple question, therefore, is when, under the circumstances of this case, is the proceeding to be regarded as having commenced.

The facts bearing on this question are as follows: The docket entries show that a paper entitled a bill in equity was filed in the office of the prothonotary by Samuel T. Benner against Robert K. Cassatt on March 7th, 1911. It is impossible at this time to ascertain what averments this so-called bill contained, or what were its prayers, because it has disappeared from the record. It is stated by counsel for the plaintiff that its disappearance is due to his having borrowed it from the deputy prothonotary as soon as it was marked "filed." The taking away of this paper from the prothonotary's office was in direct violation of Section 1 of Rule 32, by which it is provided that, "No records shall be removed from the office of the prothonotary, except when needed for use by the courts or by auditors, masters or other similar officers appointed by the courts." The paper thus abstracted has not been returned to the files, nor has any attempt been made to replace it by a properly authenticated substitute. On March 14th, 1911, the

plaintiff filed as of the same term and number another paper, also entitled a bill in equity. Upon this was endorsed a notice to the defendant requiring him to appear and answer it. Since this notice is dated March 14th, 1911, a date which the notice endorsed on the paper originally filed as a bill in all probability did not bear, there is no reason to suppose that the second bill was identical in other particulars with the first bill filed; and owing to the disappearance of the paper first filed, it is impossible now to determine by comparison whether or not its substance was the same as that of the bill subsequently filed. Service of the copy of the second bill was accepted by counsel for the defendant, who claims, without contradiction, that neither he nor his client knew, until March 14th, 1911, the day when he accepted service of the second bill filed, that any proceeding had been begun by the plaintiff. The case was tried on the bill filed March 14th, 1911, and the defendant's answer thereto. Nothing was said at the trial about the filing of any other bill, and how completely even counsel for the plaintiff had forgotten that any step had been taken in the case prior to the filing on March 14th, 1911, of the bill of which service was accepted on behalf of the defendant on that day may be gathered from the efforts in which he participated to establish the facts as of that date.

Under these circumstances, we have no doubt that the case must be regarded as having been commenced on March 14th, 1911, and that it must be disposed of upon that theory. It may be said in a general way that, except where there is a voluntary appearance, the issuing and service of formal process is essential effectively to constitute one a party defendant. In this State, therefore, before any person is bound to consider himself a party defendant to a bill in equity, the bill must have been filed in the office of the prothonotary, and the defendant must have been served with a copy thereof, having endorsed upon it a notice to appear within fifteen days

in the court where the bill has been brought, and observe what such court shall direct. The equity rules provide that no suit shall be deemed pending until the bill in equity is filed in the prothonotary's office. In interpreting the rule, due effect must be given to the phrase "actually filed." It is no compliance with this requirement to exhibit to the prothonotary, or his deputy, a bundle of written pages, have the bundle marked "filed" and assigned to a certain court, term and number, and then take the bundle away, leaving to represent it in the files of the office merely a piece of paper marked with the term and number of the case and the names of the parties. The prothonotary has no power to permit an unprinted injunction bill to be filed unless it be accompanied by a certificate stating either that the plaintiff, by reason of poverty, is unable to pay for printing it, or that there has not been time to print it. It is admitted in this case that no such certificate accompanied the paper presented by counsel to the prothonotary on March 7th. 1911. It, therefore, should not have been received by the prothonotary; and, for this reason, in conjunction with the fact that in violation of the rule of court it was withdrawn from the prothonotary's office immediately after it was marked "Filed," and the additional fact that it has never been returned, we feel bound to disregard it altogether and to hold that these proceedings were actually begun only when the printed bill now remaining of record was filed and service thereof was accepted on behalf of the defendant, which, it appears, was March 14th, 1911. It was, therefore, entirely pertinent to inquire into and ascertain the state of facts existing at or near the boundary line of the parties on the date last named; and since it appears that the intrusion or trespass complained of by the plaintiff had then ceased, the dismissal of the bill, so far as it was based on the ground of a continuing trespass, was inevitable.

Little need be said to sustain the refusal of the trial

judge to state an account of the damages suffered by the plaintiff through the trespass committed on his land.

No loss or pecuniary injury of any kind was proved. The claim advanced that it was not necessary for the plaintiff to produce evidence of the extent of his mental pain and suffering sustained by reason of the projection of the foundation stones of the defendant's wall into the soil of his lot, and that it was the duty of the trial judge to fix the amount that would reasonably compensate him therefor, as best he could, is, to put it mildly, entirely untenable. Such a thing as mental pain and suffering in a case of trespass quare clausum fregit was never heard of. To support even a claim for nominal damages, it was necessary that the plaintiff establish that the trespass complained of was committed either by the defendant or some servant of his acting within the scope of his employment, or, if the construction of the wall was let out to an independent contractor, that the work necessarily involved a trespass on the plaintiff's land; but none of these things was shown. Outside of all this, however, we are of the opinion that the right to claim an award of damages for the trespass in these proceedings vanished when it became evident that the defendant's wall was not a party wall, and that the stones that projected from this foundation into the soil under the surface of the alley had been removed before the proceeding was, in fact, begun. The right to claim damages in equity is a mere incident to the jurisdiction that equity has acquired over a matter for some reason other than the existence of a wrong for which the law affords ample remedy. If it appear that the jurisdictional facts are not present, a chancellor has no authority to proceed with the case for any purpose. It cannot be that a party may escape all the risks and inconvenience involved in presenting to a jury his claim for damages in respect to a trespass that has ceased, or a nuisance that has been abated, by

demanding a trial in equity, on the ground that he has coupled with his prayer for damages a prayer for an injunction to restrain the continuance of that which has already ended.

The plaintiff's exceptions are dismissed, and counsel may prepare a final decree following the form of the decree nisi.

*Error assigned* was decree dismissing the bill.

*Henry K. Fox,* for appellant.—An owner cannot encroach upon the adjoining lot, save for the construction of a party wall: Western Nat. Bank's Appeal, 102 Pa. 171; Gordon v. Milne, 2 W. N. C. 513; McCall v. Barrie, 15 W. N. C. 28.

In the case at bar, the appellee built a foundation wall over the line, but, in erecting the super-imposed brick wall, he receded sufficiently to bring the latter wall within and flush with the boundary line, and built therein window openings, which were manifestly illegal in a party wall: Milne's App., 81 Pa. 54.

The presence of an alley on the south side of appellant's lot does not preclude his using the wall built by his neighbor, in the nature of a party wall, for support of a building erected over the alley by appellant, and the privilege of attaching his structure to the said wall, provided he does not interfere with the easement for passageway and watercourse: Patterson v. R. R. Co., 26 W. N. C. 327; Duross v. Singer, 224 Pa. 573; Carter v. Lebzelter, 45 Pa. Superior Ct. 478; Mercantile Library Co. v. University of Pennsylvania, 220 Pa. 328.

Neither is the appellee to be excused for his encroachment upon the soil of the appellant on the ground of mistake, carelessness or intention. It is the act itself, unaccompanied by anything else, which, in law, sets the rights of the respective parties: Western Nat. Bank's App., 102 Pa. 171; Pile v. Pedrick, 167 Pa. 296.

If the character of the defendant's wall is fixed by the foundation of it, the appellant has the right to insist that it shall be a solid wall, without openings; and he also has the right to build thereto, under municipal regulations, upon making compensation: Vollmer's Appeal, 61 Pa. 118.

The doors of a court of equity are shut against one who, in his prior conduct in the very subject-matter at issue, has violated good conscience, good faith or fair dealing: Orne v. Coal Co., 114 Pa. 172; Hart v. Kucher, 5 S. & R. 1; Hoffstot v. Voigt, 29 W. N. C. 397.

A bill in equity is lis pendens of which every one is bound to take notice, and begins when the jurisdiction attaches: Diamond v. Lawrence County, 37 Pa. 353; Fessler's Appeal, 75 Pa. 483; Warren and Franklin Ry. Co. v. Clarion Land & Imp. Co., 54 Pa. 28.

While courts of equitable jurisdiction possess a discretion as to the imposition of costs, the general rule, which would compel the party against whom the decree goes to pay the costs, is not inflexible: Stokely's Est., 19 Pa. 476; Biddle's Appeal, 19 W. N. C. 219; O'Hara v. Stack, 90 Pa. 477; Coleman v. Ross, 46 Pa. 180; Eppley v. Naumann, 5 Pa. D. R. 471.

*Thomas Ridgway,* for appellee, cited: Mercantile Library Co. v. University of Penna., 220 Pa. 328; Pile v. Pedrick, 167 Pa. 296.

PER CURIAM, April 29, 1912:

The decree is affirmed at the appellant's cost on the opinion of Judge Audenried, dismissing exceptions to the adjudication.