## Hayes, Appellant, *v.* The Arcade Real Estate Company.

*Real property—Party walls—Foundations — Lateral support — Laches—Equity technical trespass—Act of May 7, 1855, P. L. 464.*

1. In a suit in equity to compel defendant, an adjoining owner, to remove such portions of an underpinning party wall constructed by defendant as encroached on plaintiff's land to a greater extent than the ten inches allowed by the Act of May 7, 1855, P. L. 464, and to compel defendant to close certain openings and windows in the new portion of the party wall constructed by defendant, it appeared that on the lots occupied by plaintiff and defendant respectively there were originally two three-story buildings, having a party wall between them; that plaintiff had constructed a lining wall against the foundation wall to afford additional support to the interior construction of his building; that thereafter defendant had removed the three-story building on its lot and erected a thirteen-story office building. In excavating for the foundations defendant had built an underpinning wall beneath the party wall, which extended eighteen and one-half inches upon plaintiff's ground. Defendant also built a steel frame and a lining wall against the party wall; the girders of the steel frame extended into the party wall, but were not supported by it; above the party wall defendant built a curtain wall, which joined the party wall. The lower court found that the underpinning wall was constructed

in accordance with the best practice; that it was necessary to support the party wall and protect plaintiff's building; and that it encroached on plaintiff's premises no further than was actually necessary to support the building and the lateral pressure of the ground; that no use was made by defendant either of the underpinning wall or the party wall above the surface in connection with its building, which was constructed independently of such wall, and rested entirely on its own foundation, laid on defendant's ground. The court also found that the extending of the girders into the party wall and the extension of the curtain wall over the party wall, without using it as a support for defendant's wall, was not such use of the party wall as entitled the plaintiff to relief, and dismissed the bill. *Held*, no error.

2. Where in such case it appeared that the work was done openly and in accordance with plans on file in the Bureau of Building Inspection, and that plaintiff made no complaint of the encroachment until fourteen years after the completion of defendant's building, the plaintiff could not thereafter be permitted to question the necessity of the encroachment, which at most was only a technical trespass, not the subject of equitable interference.

3. Where no use for the purpose of support was made by defendant, either of the party wall or of the underpinning wall, and where it further appeared that the entire party wall from the roof of plaintiff's building to the bottom of the underpinning wall could be removed at any time without affecting the stability of defendant's building, the mere fact that there was a physical attachment between the buildings, due to the filling in of the space between the party wall and plaintiff's wall, and to the fact that one girder protruded two inches into the party wall, was not sufficient to fasten upon the party wall and the underpinning wall as a whole the character of a party wall, and subject defendant to the liabilities and restrictions governing the use of party walls.

*Practice, Supreme Court—Appeals—Equity—Findings of fact.*

4. Findings of fact of the lower court supported by evidence will not be interfered with by the Supreme Court in the absence of clear error.

Argued Jan. 26, 1917.   Appeal, No. 357, Jan. T., 1916, by plaintiff, from decree of C. P. No. 4, Philadelphia Co., June T., 1915, No. 4849, in equity, refusing an injunction, in case of William A. Hayes, Surviving Executor and Trustee under the Will of Joseph Grandon, Deceased, v. The Arcade Real Estate Company, a corpora-

tion.  Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ.  Affirmed.

Bill in equity for an injunction.  Before CARR, J.

The opinion of the Supreme Court states the facts.

The court on final hearing dismissed the bill.  Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law, and the decree of the court.

*Alex. Simpson, Jr.,* with him *Joseph G. Magee,* for appellant, cited: Milne's App., 81 Pa. 54; Vollmer's App., 61 Pa. 118.

*John Hampton Barnes,* for appellee, cited: Sharpless v. Boldt, 218 Pa. 372.

OPINION BY MR. JUSTICE FRAZER, April 23, 1917:

Plaintiff's bill was to compel defendant, an adjoining owner, to remove such portion of an underpinning party wall, constructed by defendant and alleged to encroach on the land of plaintiff to a greater extent than ten inches allowed by the Act of May 7, 1855, P. L. 464, and to compel defendant to close certain openings and windows in a new portion of the party wall constructed by defendant.  The bill was dismissed and plaintiff appealed.

The material facts of the case are not disputed.  The parties are owners of adjoining lots on Market street, Philadelphia, being Nos. 1432 and 1434, respectively.  On these lots about fifty years ago were constructed two buildings, each three stories in height, with a party wall consisting of an eighteen-inch stone foundation extending seven feet below the surface, and a brick wall nine inches thick, extending from the surface of the ground to the roof.

Plaintiff made alterations in premises 1432 Market

street, for the purpose of fitting the property for use as a saloon, and in doing so constructed a lining wall on his lot against the foundation wall to afford additional support to the interior construction, making the part of the wall on plaintiff's property approximately thirteen inches in thickness. In 1901 defendant removed the old building at No. 1434, and began the erection of a thirteen-story office structure, known as the Commercial Trust Building. The plan of the building contemplated a construction resting on its own foundations, without depending for support upon the party wall, which defendant considered to be of insufficient strength to sustain the new structure. In excavating for foundations plaintiff was obliged to go considerably below the foundation of the old party wall, and in the course of the work was required to provide for its support. For this purpose defendant shored up the wall temporarily, made the excavation for the foundation which extended thirty feet below the surface, and constructed on this foundation immediately under the party wall a subfoundation, or underpinning wall, forty-eight inches thick, which extended eighteen and one-half inches on plaintiff's ground, and twenty-nine and one-half inches on defendant's property. Upon completion of the underpinning to within a foot of the bottom of the old party wall, the two were connected by filling the remaining space with bricks until the party wall rested on the subfoundation. The added underpinning, when completed, extended four or five inches further on plaintiff's property than the old wall as it existed previous to that time. Having provided for the safety of the party wall, defendant next proceeded to construct the foundation for its building. The work was begun with concrete foundations, known as "footings," nine feet long and laid perpendicular to the party wall and extending into the underpinning wall in recesses cut for that purpose until they practically reached the party line. After the footings were in place the spaces in the underpinning wall were closed with

cement. Upon the footings were placed columns supporting a cantilever steel construction on which rested the upright steel columns of the building, running to the top and supporting the girders at each floor, thus creating a form of construction used for the purpose of distributing weight over a large area of surface. The end of the construction extended into the four-foot wall to within about five inches of the property line. The beams when in place were imbedded in concrete, thus making the foundation a solid mass of steel and concrete resting on footings entirely within the line of defendant's property, independent of the party wall, and connected therewith only because of the concrete filling between the two walls. On this foundation the steel columns of the building rested. In putting the cross girders in place a cut into the party wall of about four inches became necessary, and when in place the beams extended into the wall a distance of one and one-half inches, the remaining space being filled with concrete. Following the completion of the steel structure, a lining wall, supported by the steel frame, was constructed against the party wall and extended upward, receding outward at the top of the underpinning wall, and following the line of the old wall until the top was reached, at which point it was built over for a distance approaching four and one-half inches to the party line. From this point the wall, known as a "curtain wall," extends upward to the roof of defendant's building, within the line of defendant's property, and is independent of the party wall, though in contact with it, by reason of the use of concrete filling in the cracks at the joints. The removal of the old wall would not, in the slightest degree, affect the stability of the new.

The court below found the underpinning wall necessary to support the party wall and protect plaintiff's building; that the work was done by competent contractors in accordance with the best practice and usage in the business; that it encroached on plaintiff's premises

no further than actually necessary to support his building and lateral pressure of the ground; and, that no use was made by defendant of either it or the party wall above the surface in connection with its building, which was constructed independently of such wall, and rested entirely on its own foundation, laid on defendant's ground. The court also reached the conclusion that the channeling of the party wall for the purpose of setting the girders, the contact of the curtain wall of defendant's building with the party wall, the extension of the curtain wall over the party wall at the top of the latter and the cementing of the cracks to make the party wall weathertight, without using it as support for defendant's wall, was not such use of the party wall as entitled plaintiff to have his bill sustained. So far as the findings of fact are concerned, they are fully supported by the evidence, and present no cause for interference by this court: Anthracite Lumber Co. v. Lucas, 249 Pa. 517; Law v. First Nat. Bk. of Pittsburgh, 247 Pa. 493; Duffey v. Jennings, 247 Pa. 388; Mt. Oliver Boro. v. Goldbach, 244 Pa. 56. There remains to be considered only the correctness of the legal conclusion, based on the court's findings.

As to the construction of the underpinning wall, the case of Sharpless v. Boldt, 218 Pa. 372, sustains the conclusion of the trial judge. Since defendant has made no use of the wall or foundation to support the building, and as the necessity for the underpinning arose by reason of excavations on defendant's land, the duty of defendant involved lateral support, consequently the case does not fall within the provisions of the statutes relating to the construction of party walls. Defendant's duty to provide lateral support was merely to sustain the surface in its original condition, and excavate on its land in a proper and careful manner and without negligence. The practical difficulties in the way of a determination of the precise extent of this responsibility, and whether the duty has been performed in a given case, make neces-

sary and advisable, in actual practice, for the abutting owner in excavating to take the precautions necessary to assure absolute protection to the adjoining building by underpinning to the depth of the new excavations. In addition, the municipality, under its police power to safeguard the public, usually requires such action to be taken. It was in the discharge of this duty with reference to lateral support, and in compliance with the requirements of the Bureau of Building Inspection, that this underpinning wall was constructed, and this brings the situation directly within Sharpless v. Boldt, supra, where it was said (p. 379) : "If plaintiffs had built first in such way as to require the additional thickness of wall they must have put all but ten inches of it on their own land. But the additional thickness in this case was altogether for plaintiff's benefit, appellant not using the wall at all and having no necessity for such thickness. The building inspector in ordering such additional thickness of wall as he deemed proper for public safety did not specify on which land it should be located, and the appellant assumed that it was to be on plaintiffs'. As it was for plaintiffs' benefit and appellant could not be compelled to put it on his own land, he was entitled to assume that it was to be on plaintiffs'."

The trial judge further found the work was done openly and in accordance with plans on file in the Bureau of Building Inspection, and that no complaint was made by plaintiff of the encroachment until fourteen years after the completion of defendant's building. Under the circumstances, plaintiff might readily have discovered the manner of construction at the time the work was being done, and should not be permitted at this late date to question the necessity of the encroachment, which, at most, is only a technical trespass, not the subject of equitable interference, and not even entitling plaintiff to nominal damages: Sharpless v. Boldt, supra.

The remaining question is whether the fact of the absence of an actual line of separation between the un-

derpinning and the party wall and defendant's wall, though the latter was self-supporting and independent of the continued existence of the party wall, is sufficient to fasten upon the whole the character of a party wall and subject defendant to liabilities and restrictions governing the use of such wall. The cases relied upon by plaintiff to establish the affirmative of this proposition have been examined and do not go to that extent, as the following discussion will show.

Milne's App., 81 Pa. 54, merely decided that a land owner who starts the foundation as a party wall upon the property line, and uses it as a support for his wall, cannot escape the burden incident to the use of such wall by constructing the upper part entirely within the line of his property. There it was not denied that the party wall foundation was used for the support of the defendant's new wall, and the lower court said, in an opinion affirmed on appeal (p. 56): "The character of the wall must be determined in part from its foundation. If the builder starts the latter upon the line and thus takes the land of the adjoining owner, he must carry it up strictly as a party wall or at least in such manner as to give the adjoining owner all the benefits of such a wall. Otherwise the land of the latter would be taken without any corresponding benefit."

In Western National Bank's App., 102 Pa. 171, a party wall had been constructed and used for many years. Changes were made in both buildings. The owner of one built an additional lining wall, which was bolted to the old wall, for the purpose of sustaining the lateral pressure from the adjoining building. Subsequently, the owner of the latter building removed the lining wall and erected a new and higher one, also constructing an additional lining wall against the old, until it reached the top of the latter, over which it extended, treating it as a party wall. A bill was filed by the adjoining owner to restrain such use of the structure, alleging the wall was not originally constructed equally on the lots of both

parties. The court dismissed the bill, stating (page 182) : "There is no evidence to repel the natural inference from the acts of the parties that they intended it for a party wall. It has been so used ever since." And it was held the mistake as to the location of the line did not change the result.

In Pennsylvania Co. for Ins. on Lives & Granting Annuities v. Odd Fellows, 50 Pa. Superior Ct. 255, the wall in question was conceded to be a party wall and the only question was, as here, whether defendants made use of it in the erection of their building, and the court found the facts sufficient to warrant a finding of such use.

In the present case the evidence amply sustains the conclusion of the trial judge that defendants made no use of the party wall, or the foundation thereunder, either for the purpose of support or for the purpose of protection. The testimony shows the entire party wall, from the roof of plaintiff's building to the bottom of the underpinning of the foundation wall, can be removed at any time without in the slightest manner affecting the stability of the Commercial Trust Building. A physical attachment between the buildings, due to the filling of the space between the party wall and plaintiff's new wall with cement, and to the fact that one girder appears to have protruded nearly two inches into the party wall, is conceded. If, however, mere physical contact alone were made the criterion for determining the existence of a party wall, two entirely distinct and separate brick walls could not be constructed adjoining each other on the property line without combining the two as a party wall, unless a clear unused vacant space is permitted to remain between them, as, otherwise, the mortar used in laying the bricks must necessarily adhere to and to some extent attach the two walls together. While the grillage work of the foundations of defendant's building was recessed into the four-foot underpinning wall, and upon completion of the work the empty spaces filled with concrete, making the whole a solid mass when hardened, the

latter wall was not necessary to or a part of the support of defendant's building. Its presence was due entirely to the necessity for support of plaintiff's building. As the wall extended thirty inches on defendant's lot, it would, but for this, have had the use of the land, and the only alternative would have been to build the excess width solely on plaintiff's land, as might properly have been done: Sharpless v. Boldt, supra.

Decree affirmed and appeal dismissed at appellant's costs.